UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAN ABIMAEL AGUILAR MORENO,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-07855-DC-JDP<br><br><u>ORDER GRANTING HABEAS PETITION AND MOTION FOR A TEMPORARY RESTRAINING ORDER</u><br><br>(Doc. Nos. 1, 2, 3, 4) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 3), filed in conjunction with his petition for writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) Respondents do not oppose the court ruling directly on the petition. (Doc. No. 9 at 1.) Petitioner opted not to file a reply brief and thus has not affirmatively opposed the court simultaneously ruling on the habeas petition and motion for temporary restraining order. For the reasons explained below, the court finds that Petitioner's detention is unlawful due to Respondents: (1) failing to provide Petitioner with a pre-deprivation bond hearing despite Respondents' knowledge of Petitioner's allegedly unlawful presence in the United States prior to his arrest by immigration officers; (2) subjecting Petitioner to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) despite Petitioner not being an "alien seeking admission" as required by that statute, *see Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026); and (3) failing to provide Petitioner with an initial custody

determination contrary to § 1226(a) and its implementing regulations such that Petitioner was not aware of the basis for, and could not contest, his detention. Thus, the court will grant Petitioner's habeas petition and motion for a temporary restraining order and will order his immediate release.

**BACKGROUND**

Petitioner Adan Abimael Aguilar Moreno entered the United States as a minor in approximately 2006. (Doc. No. 1 at ¶ 15.) Petitioner has remained in the United States since that time, and has established significant ties here, including by marrying a U.S. citizen and fathering a U.S. citizen daughter. (*Id.* at ¶¶ 22–23.)

Petitioner was granted Deferred Action for Childhood Arrival ("DACA") status from November 7, 2014, to October 12, 2023. (Doc. Nos. 1 at ¶¶ 18–19; 9-1 at 3.) Petitioner filed a renewed DACA application on November 8, 2024, but "[p]er USCIS DACA has been on hold since July 2021 and [Petitioner] has not been granted deferred action." (Doc. No. 9-1 at 3.)

Petitioner was detained by immigration authorities on July 22, 2025. (Doc. No. 1 at ¶ 28.) Petitioner alleges he was not provided an immigration arrest warrant at the time of his arrest. (*Id.* at ¶ 48.) He has remained in immigration detention since that time and is currently detained in the California City Detention Center. (*Id.* at ¶ 29.) Petitioner has a pending criminal case in state court but has been unable to attend his criminal proceedings because of his immigration detention. (*Id.* at ¶¶ 45–46.)

On May 15, 2026, Petitioner was ordered removed from the United States. (*Id.* at ¶ 41.) He has appealed that order of removal to the Board of Immigration Appeals. (*Id.* at 42.) His appeal remains pending. (*Id.* at ¶ 43.)

On September 24, 2026, Petitioner filed the pending habeas petition asserting five claims: (1) prolonged detention in violation of his Fifth Amendment right to Due Process; (2) denial of meaningful review of his continued detention in violation of his Fifth Amendment right to Due Process; (3) failure to establish lawful basis for his arrest and detention in violation of 8 C.F.R. § 236.1; (4) failure to consider less restrictive conditions of release in violation of 8 U.S.C. § 1226(a); and (5) interference with Petitioner's ability to participate in his criminal proceeding. (*Id.* at 6–10.)

On September 29, 2026, Respondents filed their opposition in which they agree that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) but argue that he has received all the process to which he is entitled under that statute. (Doc. No. 9 at 1–2.) Specifically, Respondents allege that Petitioner withdrew requests for a custody redetermination hearing on August 12, 2025, October 17, 2025, and November 14, 2025. (Doc. No. 9 at 2.) Petitioner was provided a custody redetermination hearing on December 4, 2025, at which the immigration judge declined to proceed for lack of jurisdiction under *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). On January 30, 2026, Petitioner appeared for a custody redetermination hearing at which the immigration judge denied release, finding that the government met its burden of showing that Petitioner was a flight risk. (*Id.*) Respondents additionally emphasize that Petitioner was detained pursuant to a warrant for arrest of alien after officers discovered Petitioner had been arrested the previous month for rape of a victim unconscious of the nature of the act. (*Id.* at 1.)

Petitioner has not filed a reply and his time to do so has expired.

## LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "[T]he 'in custody' provision . . . requires only that a petitioner be incarcerated—or, as here, in INS custody—at the time a habeas petition [was] filed." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr.*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678 (2001).

/////

## DISCUSSION

Petitioner argues that his prolonged detention violates his constitutional right to due process because (1) Petitioner's fifteen-month detention violates his right to due process; and (2) Respondents did not follow their own regulations in effectuating his arrest on July 22, 2025. (Doc. No. 1 at 6–10.)

### A. Due Process

While "[t]he right to be free from temporary detention before adjudication, absent adequate justification, is at least as old as the Magna Carta," "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of . . . American legal traditions since the thirteenth century." *Padilla v. U.S. Immigr. and Customs Enf't*, No. 24-2801, 2026 WL 2822044, at *16–17 (9th Cir. 2026). Indeed, "[t]he application of the Fifth Amendment to noncitizens has been repeatedly and resoundingly reaffirmed . . . since *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)." *Padilla*, 2026 WL 2822044, at *11. "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. Oct. 10, 2025).

Petitioner's continued detention implicates two concerns that this court has previously found constitute violations of a noncitizen's right to due process in relation to immigration detention. First, this court has previously found that where the government has notice of a noncitizen's allegedly unlawful presence in the United States but makes no effort to effectuate their detention for an extended period of time, the noncitizen develops a liberty interest in their continued freedom such that the government must provide the noncitizen with notice and a pre-deprivation hearing before they may be detained. *Oliveira Tinoco v. Albarran*, No. 1:26-cv-05505-DC-CKD, 2026 WL 2949219 (E.D. Cal. Oct. 1, 2026) (finding that noncitizen was entitled to pre-deprivation hearing where she lawfully entered the country on a visa, remained past the visa expiration date, and filed multiple applications for immigration relief after the expiration date); *Polynice v. Chestnut*, No. 1:26-cv-07674, 2026 WL 3072458 (E.D. Cal. Oct. 14, 2026) (same as to noncitizen who entered United States lawfully but filed multiple asylum applications

in the three years prior to his detention). Here, Petitioner's documentation shows that Petitioner applied for DACA status in June 2014, was granted DACA status until October 2023, and that his renewed request for DACA status filed in November 2023 remains pending. (Doc. No. 9-1 at 3.) Thus, Respondents knew and approved of Petitioner's allegedly unlawful presence in the United States since at least 2014, and took no steps to effectuate his arrest once that status expired in October 2023.[1] Petitioner therefore maintains a liberty interest in his continued freedom such that Respondents must provide him with a pre-deprivation bond hearing before seeking to detain him under § 1226(a). *Oliveira Tinoco*, 2026 WL 2949219, at *5 (stating that where "the government was not only aware of but *approved of* the noncitizen's initial presence in the country—that noncitizen develops a vested liberty interest in remaining free from detention" if the government does not act to detain the noncitizen "within a reasonable time" following expiration of that status).

Second, while Respondents now acknowledge that Petitioner's detention is governed under § 1226(a), at Petitioner's first substantive bond hearing, which occurred approximately five months after his detention, the immigration judge found that he lacked "jurisdiction over the request for custody redetermination" pursuant to *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (BIA 2025). In *Yajure Hurtado*, the Board of Immigration Appeals held that noncitizens who "surreptitiously cross in to the United States remain applicants for admission [under 8 U.S.C. § 1225] until and unless they are lawfully inspected and admitted by an immigration officer." 29 I.&N. Dec. 216, 228. Thus, the Board of Immigration Appeals found that just as immigration judges "have no authority to redetermine the custody of arriving aliens who present themselves at a port of entry, they likewise have no authority to redetermine the custody conditions of an alien

[1] Respondents emphasize that Petitioner was detained when immigration authorities became aware of Petitioner's arrest on rape related charges the month before his detention. (Doc. No. 9 at 1.) Respondents do not address why this rendered them unable to provide Petitioner with a pre-deprivation bond hearing before his arrest. *See Bonilla Urbina v. Current or Acting Warden of Cal. City Det. Facility*, No. 1:26-cv-08020-DC-JDP, 2026 WL 3059495, at *1 (E.D. Cal. Oct. 13, 2026) ("[A]s numerous courts within the Ninth circuit, including this court, have found, due process requires a pre-deprivation bond hearing even where a noncitizen is allegedly detained by immigration authorities in relation to criminal charges.").

who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years." *Id.* The Board of Immigration Appeals' interpretation was overwhelmingly rejected by courts in the Ninth Circuit, including this court; it was officially rejected by the Ninth Circuit in *Rodriguez Vazquez*. Thus, while Respondents now contend that Petitioner received all the process entitled to him under § 1226(a), the record shows that Petitioner was erroneously subjected to mandatory detention without the chance to advocate for his release on bond for the first five months of his detention. As this court has found, "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." *Brito v. U.S. Immigr. and Customs Enf't*, No. 1:26-cv-07869, Doc. No. 14, at *8 (E.D. Cal. Oct. 16, 2026) (quoting *Feng v. Lyons*, No. 1:26-cv-00235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026)).

Accordingly, the court finds that Petitioner's initial detention violated his right to due process both because Petitioner was not provided with a pre-deprivation bond hearing before his re-detention, and because Petitioner was erroneously subjected to mandatory detention without possibility of release on bond for the first six months of his detention.

**B. Statutory Authority for Detention**

While the violations of Petitioner's right to due process are sufficient to grant his habeas petition and order his immediate release, the court further finds that Respondents violated § 1226(a) and its implementing regulations in effectuating Petitioner's arrest. Specifically, when the government detains a noncitizen under § 1226(a), Department of Homeland Security officers must conduct an initial custody determination to determine whether detention or release is appropriate under § 1226(a). 8 C.F.R. § 236.1(c)(8) (permitting any "officer authorized to issue a warrant of arrest" to "release an alien . . . under the conditions at section [1]236(a)(2) and (3)" "provided that the alien [] demonstrates to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding"). The officer making this initial determination memorializes the determination on Form I-286, notice of initial custody determination. 8 C.F.R. § 236.1(g). The notice of custody

determination also includes "the formal mechanism—a box the detainee may check—to immediately request" that an immigration judge review the initial custody determination at a custody redetermination hearing. *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, the noncitizen is entitled to such a hearing in immigration court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19.

Here, Respondents allege that Petitioner was arrested pursuant to a warrant and attach to their opposition the warrant showing service on the date of Petitioner's detention. (Doc. Nos. 9 at 1; 9-1.) However, Respondents neither allege the arresting officer conducted a custody determination upon Petitioner's detention nor attach a notice of custody determination to their opposition. Other courts in this district have found that the government's failure to provide a noncitizen "with an initial custody determination by an immigration officer where [the noncitizen] ha[s] the opportunity to demonstrate that his release would not pose a danger or flight risk," and to "provide[] notice of the basis for his detention" "serve[s] as a basis for an order requiring the release of [the noncitizen]." *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026). Specifically, such a failure "prevents the court from concluding that petitioner is properly detained on that [purported] basis." *Id.* (citation omitted). The risk of confusion as to the lawful basis is particularly confusing here, where Petitioner was initially detained under § 1225, but Respondents now contend he is detained under § 1226 and has been provided all procedural protections permitted under that section. *Id.* (stating that where petitioner was initially "detained on the basis of 8 U.S.C. § 1225(b)(2)(A)" and was therefore "not provided with the pre-deprivation process required under § 1226(a)" the government "did not comply with the requirements of 8 U.S.C. § 1226(a)" mandating Petitioner's immediate release). This court joins its sister courts in finding that where there is no indication that the arresting officer makes an initial custody determination and permits the noncitizen to demonstrate that his release is proper, that detention is unlawful and the proper remedy is Petitioner's immediate release.

/////

## CONCLUSION

For the reasons stated above,

1. Petitioner's petition for writ of habeas corpus (Doc. No. 1) and Motion for a Temporary Restraining Order (Doc. No. 3) are GRANTED as follows:
    a. Respondents shall immediately release Petitioner Adan Abimael Aguilar Moreno (A-207-293-402) from their custody;
    b. Upon his release, Respondents shall not impose any additional restrictions on Petitioner, such as electronic monitoring, unless that is determined to be necessary at a future custody hearing;
    c. Respondents shall RETURN all of Petitioner's documents and possessions upon his release from custody;
    d. If the government seeks to re-detain Petitioner, they shall provide him with a prompt bond hearing at which Petitioner shall bear the burden of showing that he is not a flight risk or a risk to community safety;
2. The pending motions (Doc. Nos. 2, 4) are denied as having been rendered moot by this order;
3. The Clerk of the Court is directed to serve a copy of this order on the California City Detention Facility; and
4. The Clerk of the Court is directed to enter judgment for Petitioner and close this case.

IT IS SO ORDERED.

Dated: **October 20, 2026**

Dena Coggins
United States District Judge